FILED & ENTERED

APR 30 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio     DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# NORTHERN DIVISION

In re:

HVI CAT CANYON, INC.,

        Debtor.

GLR LLC, a Delaware limited liability company; GRL LLC, a Delaware limited liability company; and RANDEEP S. GREWAL, an individual,

        Plaintiffs,

        vs.

UBS AG, a Swiss Corporation; and Does 1-10, inclusive,

        Defendant.

Case No.: 9:19-bk-11573-MB

Chapter 7

Adv. Proc. No.:  9:25-ap-01038-MB

**ORDER GRANTING MOTION FOR REMAND**

On October 8, 2025, Defendant UBS AG ("Defendant") filed its *Notice of Removal to Bankruptcy Court* ("Removal Notice"), removing a civil action from the Superior Court for the State of California ("Superior Court") and resulting in the opening of this adversary proceeding. Adv. Dkt. 1.[1] On October 9, 2025, the Court entered its *Notice of Status Conference and Order to Show Cause re: Remand in a Removed Proceeding* ("OSC"). Adv. Dkt. 3.

On November 7, 2025, Plaintiffs GLR LLC ("GLR"), GRL LLC ("GRL"), and Randeep S. Grewal ("Grewal") (collectively, "Plaintiffs") filed their motion to remand the civil action to the Superior Court ("Motion"). Adv. Dkt. 17. After several hearings, and multiple rounds of briefing, the Motion is ripe for decision.

## I. BACKGROUND

### A. Procedural Background re: Removal and Remand

The Removal Notice removed the Superior Court lawsuit styled *GLR LLC, a Delaware limited liability company; GRL LLC, a Delaware limited liability company; and RANDEEP S. GREWAL, an individual, vs. UBS AG, a Swiss Corporation; and Does 1-10, inclusive*, Case No. 24STCV13821 (the "Civil Action").

This is the second time the Civil Action has been removed to this Court. Defendant originally removed the Civil Action on June 20, 2024. *See* Adv. Proc. No. 9:24-ap-01020 ("Prior Removal"), Dkt. 1. On January 31, 2025, after extensive argument and briefing, the Court entered its order remanding the Civil Action to the Superior Court on equitable grounds, pursuant to 28 U.S.C. § 1452(b) ("Original Remand Order"). Prior Removal, Adv. Dkt. 87. Defendant thereafter filed a motion for reconsideration and clarification ("Reconsideration Motion"). Prior Removal, Adv. Dkt. 89.

After additional briefing and argument, the Court entered its order granting in part and denying in part the Reconsideration Motion. Prior Removal, Adv. Dkt. No. 104. In accordance

---

[1] Unless otherwise indicated, (i) references to "Adv. Dkt." refer to the docket maintained in the above-captioned adversary proceeding, and (ii) references to "Case Dkt." refer to the docket maintained in the above-captioned bankruptcy case. References to the "Bankruptcy Code" refer to title 11 of the United States Code.

2

with that order, the Court amended the Original Remand Order ("Amended Remand Order"), but the ultimate result did not change. Prior Removal, Adv. Dkt. No. 105. Pursuant to the Amended Remand Order, the Court remanded the Civil Action to the Superior Court.

Following remand, Plaintiffs amended their original complaint in the Civil Action ("Original Complaint") by filing their *Amended Complaint For (1) Breach of Contract; and (2) Money Had and Received* ("Amended Complaint"). *See* Adv. Dkt. 15-20 at 2-21. Defendant contends that Plaintiffs' amendments fundamentally altered the Civil Action in such a way as to justify removal a second time. Based on these amendments, Defendant believes that there is an even stronger case for this Court to retain and adjudicate the Civil Action. Plaintiffs disagree.

Although the Court understands why Defendant believed that changes to the Original Complaint might change the Court's calculus regarding whether to retain the Civil Action, the Court ultimately is not persuaded. As explained below, the Court reaches the same conclusion as it did previously: the Civil Action is most appropriately adjudicated in the Superior Court and should be remanded on equitable grounds.

**B. The Civil Action and the Bankruptcy Case**

Plaintiffs initiated the Civil Action to enforce certain contracts between the parties, i.e., a certain *Waiver, Release and Discharge Agreement* dated May 20, 2016 ("Waiver Agreement"), and a certain *Release Agreement* of the same date ("Grewal Release") (collectively, the "Waiver Agreements"). Prior Removal, Adv. Dkt. 1 at 7 (Original Complaint). The disputes allegedly trace their origin to a certain *Volumetric Production Payment Agreement* (the "VPP") entered into in 2007, to which Defendant, HVI Cat Canyon, Inc. (the "Debtor") and a third-party entity, Rincon Island Limited Partnership, are parties. The Waiver Agreements allegedly were entered into in connection with a restructuring of the VPP in 2016.

The Debtor filed a voluntary petition for relief under chapter 11 on July 25, 2019, in the Bankruptcy Court for the Southern District of New York. The chapter 11 case was then transferred to the Bankruptcy Court for the Northern District of Texas, and thereafter transferred to this Court. On October 16, 2019, the Court entered an order appointing a chapter 11 trustee in the case. Case Dkt. 409. The United States Trustee appointed Michael A. McConnell chapter 11 trustee. Case

Dkt. 418.  On December 17, 2020, the Court entered an order converting the case to chapter 7. Case Dkt. 1531.  The United States Trustee thereafter appointed McConnell chapter 7 trustee.  Case Dkt. 1537.

On December 10, 2020, the Court entered an order approving a stipulation between McConnell, UBS AG, London Branch and UBS AG, Stamford Branch which, among other things, created a litigation fund (the "Litigation Fund") for "prosecuting litigation claims against insiders." Case Dkt. 1504; see also Case Dkt. 1411 at 19-24 (stipulation).  The Litigation Fund was to be created with proceeds from the sale of certain estate assets and an additional contribution from these UBS entities.  Case Dkt. 1411 at 20.

On July 23, 2021, McConnell commenced an adversary proceeding against Grewal, GLR, GRL and various other defendants (the "Trustee Litigation").  Case No. 9:21-ap-01025 Adv. Dkt. 1. The complaint in the Trustee Litigation asserts a variety of causes of action, including breach of fiduciary duty, aiding and abetting breach of fiduciary duty, avoidance and recovery of fraudulent transfers, aiding and abetting fraudulent transfers, avoidance and recovery of preferential transfers, negligence, breach of contract, unjust enrichment, declaratory relief and equitable relief. *Id.*  The Trustee Litigation remains pending.[2]

On May 3, 2022, Mr. McConnell filed a motion requesting approval of additional litigation financing of $1.5 million, plus subsequent advances up to $4 million, from UBS AG Stamford Branch (the "Litigation Financing").  Case Dkt. 1794.  On June 17, 2022, the Court entered its order approving the Litigation Financing.  Case Dkt. 1873.

The Original Complaint contained five causes of action.  Four sought contractual damages and the fifth sought related declaratory relief.  The gravamen of these claims was that Defendant breached the Waiver Agreements by creating the Litigation Fund, providing the Litigation Financing, enabling the Trustee to prosecute the Trustee Litigation, withholding its consent to a

---

[2] On or about March 14, 2023, McConnell resigned as trustee, and Brad D. Krasnoff was appointed successor trustee on March 16, 2023. Case Dkt. 1983, 1988.  Thereafter, Krasnoff became the plaintiff in the Trustee Litigation.

settlement that might have resolved certain claims against Plaintiffs, and obtaining a share of the potential proceeds from the Trustee Litigation.

The Amended Complaint eliminates all but the first cause of action under the Original Complaint and adds a new one. The first cause of action under the Amended Complaint ("First Cause of Action") alleges Defendant breached the Waiver Agreement for all the reasons alleged in the Original Complaint (i.e., relating to the Litigation Fund, Litigation Financing, and Trustee Litigation). *Compare* Adv. Dkt. 15-20 at 17-18 *with* Prior Removal, Adv. Dkt. 1-1 at 20-21.

The second and new cause of action under the Amended Complaint ("Second Cause of Action") alleges a common count for "money had and received" based on a certain subordination agreement ("Subordination Agreement") entered into by GLR and Defendant in 2016, in connection with Waiver Agreements and related transactions. Adv. Dkt. 1-1 at 8, 18-20. Pursuant to the Subordination Agreement, GLR agreed to subordinate its pre-existing lien in assets of the Debtor to a $100 million senior secured lien of Defendant.

More specifically, the Second Cause of Action alleges that GLR executed the Subordination Agreement in reasonable reliance on the promises made by Defendant under the Waiver Agreement not to pursue or participate in litigation against Plaintiffs with respect to the claims released under that agreement. Adv. Dkt. 1-1 at 18. The Second Cause of Action further alleges that Defendant denied Plaintiffs the consideration they bargained for (in exchange for executing the Subordination Agreement), by subsequently breaching the Waiver Agreement (as alleged in the First Cause of Action). *Id.* Alternatively, the Second Cause of Action alleges that GLR's execution of the Subordination Agreement was procured through mistake, fraud, coercion, breach of duty or other inequitable conduct. Adv. Dkt. 1-1 at 19.

Based on these allegations, the Second Cause of Action seeks recovery from Defendant for the funds it received from the Debtor's bankruptcy estate following the sale of substantially all of the Debtor's assets. Adv. Dkt. 1-1 at 20-21. The Second Cause of Action contends the distribution of sale proceeds to Defendant unjustly enriched Defendant at the expense of GLR. On this basis, Plaintiffs seek the imposition of a constructive trust on the funds received by Defendant and payment of those amounts to GLR. *Id.*

## II.  ANALYSIS

**A.  Timeliness**

As a threshold matter, Plaintiffs argue that the Civil Action should be remanded to the Superior Court because it was not timely removed.  Defendant disagrees.

A party to any claim or cause of action that is subject to bankruptcy jurisdiction may remove that claim or cause of action to the district court for the district in which it is pending.  28 U.S.C. § 1452(a).  Each district court, in turn, may refer proceedings subject to bankruptcy jurisdiction to the bankruptcy judges for the district.  28 U.S.C. § 157(a).  Federal Rule of Bankruptcy Procedure 9027 implements the removal authorized by section 1452(a).  In relevant part, Rule 9027 provides:

> If a claim or cause of action is asserted in another court after the bankruptcy case was commenced, a party filing a notice of removal must do so within the shorter of these periods:
>
> (A) 30 days after receiving (by service or otherwise) the initial pleading setting forth the claim or cause of action sought to be removed; or
>
> (B) 30 days after receiving the summons if the initial pleading has been filed but not served with the summons.

Fed. R. Bankr. P. 9027(c)(3).

Plaintiffs acknowledge that the Removal Notice was filed by Defendant within 30 days of Defendant receiving the Amended Complaint, but argue the Removal Notice nevertheless was untimely for two reasons.

First, Plaintiffs contend the Removal Notice is untimely as to the First Cause of Action because that claim was first asserted in the Original Complaint, in 2024 and the time to remove it has expired.  Second, Plaintiffs contend the Removal Notice is untimely as to the Second Cause of Action because it is based on the same nucleus of operative facts as the Original Complaint.  In other words, Plaintiffs argue that the Second Cause of Action is part and parcel of the Original Complaint, which was filed in 2024 and cannot now be removed.

Conversely, Defendant argues that its Removal Notice is *timely* for two reasons.  First, Defendant argues that "as a technical matter, the Civil Action was in fact removed by Defendant within 17 days of its initial commencement.  That this Court remanded the action as it was then configured does not change that fact."  Adv. Dkt. 22 at 24.  Second, Defendant argues that the Amended Complaint is "materially changed" and therefore its filing of the Removal Notice within 30 days of receipt of the Amended Complaint is timely. *Id.*

Neither side is entirely correct.  The plain language of Rule 9027(c)(3) indicates that timeliness is determined with respect to each "claim or cause of action" that is removed.  It does not instruct the Court to decide whether the entirety of a complaint is either timely or untimely.  When framed in this manner, the Court reaches different results for each of the two claims in the Amended Complaint.

The First Cause of Action in the Amended Complaint is virtually identical to the first cause of action in the Original Complaint.  Although the removal of that claim was timely in June 2024, the latest removal of the claim is not.  The Removal Notice at issue here was filed more than one year after Defendant received the Original Complaint, which constitutes the "initial pleading setting forth the claim or cause of action sought to be removed."  Accordingly, the time to remove the First Cause of Action has long since passed.

Defendant's contention that it "technically" complied with Rule 9027(c)(3) because of its *prior* removal is unpersuasive.  In essence, Defendant is arguing that because its removal of the First Cause of Action was timely back in 2024, its subsequent removal of that claim also must be timely.  As a matter of logic and common sense, this cannot be correct.  Taken to its logical extreme, this position would render timely *any* subsequent removal of a claim timely, no matter how many times it has been removed and remanded.  There is no indication in the text of the Rule that the drafters intended this untenable result.

Defendant's citation to *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) is likewise unavailing.  Defendant cites *Royal Canin* for the unremarkable proposition that an amended complaint becomes the operative complaint for purposes of determining whether a court has subject matter jurisdiction.  Adv. Dkt. 22 at 26 & note 92.  But *Royal Canin* did not address

Rule 9027(c) or consider whether a removal was timely. *Royal Canin* held that a plaintiff's post-removal amendment of a complaint to delete all federal claims deprived the district court of supplemental jurisdiction over the remaining state law claims. That case did not involve, and provides no guidance on the problem presented here: the successive removal of a cause of action previously removed and remanded.

Furthermore, the Court rejects Defendant's suggestion that the First Cause of Action in the Amended Complaint is materially different than the first cause of action alleged in the Original Complaint. Defendant relies on the addition of a series of factual allegations regarding Defendant's conduct during the bankruptcy case, and the addition of the Second Cause of Action, to argue that Plaintiffs "have created a different dispute than was previously before this Court" and "effectively create[ed] a new lawsuit." Adv. Dkt. 22 at 24-26. The relevant question is not whether the Civil Action or operative complaint, as a whole, is sufficiently different than it was when it was previously remanded. The relevant question is whether the Amended Complaint contains any claim that was first asserted in the Original Complaint and therefore subject to a removal deadline that has since expired. The Court concludes the First Cause of Action is just such a claim.

In contrast, the Court concludes that the Second Cause of Action is a *new* claim. Although the claim relies, in part, on background facts that were first alleged in the Original Complaint, the Second Cause of Action is premised on the contention that Defendant has unfairly benefitted from the Subordination Agreement. The Original Complaint did not even mention the Subordination Agreement, let alone argue that (i) Defendant prevented Plaintiffs from realizing the consideration for which they agreed to execute the Subordination Agreement, or (ii) Plaintiffs were induced to enter the Subordination Agreement through mistake, fraud, coercion, breach of duty or other inequitable conduct. These allegations constitute an entirely new cause of action, which appears for the first time in the Amended Complaint. Accordingly, the 30-day period to remove this claim was not triggered until receipt of the Amended Complaint.

Accordingly, the Court finds that removal of the First Cause of Action was untimely under Federal Rule of Bankruptcy Procedure 9027(c)(3). Independent of the equitable remand analysis that follows, the Court concludes that the First Cause of Action must be remanded. Conversely, the

8

Court finds that removal of the Second Cause of Action was timely under Rule 9027(c)(3) and that remand on this ground is not appropriate.

**B.  Jurisdiction**

The parties have dedicated a substantial portion of their briefing and oral argument to the question of jurisdiction.  Jurisdiction is significant here for two reasons.  First, if the Court has no jurisdiction over a claim, the Court cannot retain it and must remand it.  Second, assuming the Court has jurisdiction, the *nature* of the Court's jurisdiction is relevant to its equitable analysis of whether to retain or remand a claim.  *See* Section II.C. below.

Bankruptcy jurisdiction is governed by 28 U.S.C. § 1334(b).  That statute grants this Court, by reference from the District Court, "original but not exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a); General Order No. 13-05 (C.D. Cal. July 1, 2013).

"A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray,* 624 F.3d 1124, 1131 (9th Cir. 2010).  A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.*  An action is "related to" a bankruptcy case if the outcome of the proceeding could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact the administration of the bankruptcy estate. *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Congress further divided bankruptcy court jurisdiction into "core proceedings" and "non-core" proceedings. *See Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 33 (2014).  Proceedings that "arise under" the Bankruptcy Code or "arise in" a case under the Bankruptcy are

considered "core."  *Id.*  Those that are merely "related to" a Bankruptcy Case are considered "non-core."  *Id.*

### 1.  "Arising Under"

Defendant asserts that the Court has "arising under" jurisdiction over both counts in the Amended Complaint, although its arguments focus principally on the Second Cause of Action.[3] Defendant contends that the Second Cause of Action is a dispute arising under the Bankruptcy Code because "[s]tripped of its essentials" it "asks a non-bankruptcy court to reclassify and disgorge distributions this Court authorized under sections 363, 364, 507(b) and 726, and to reorder superpriority and priming rights granted by this Court's Cash Collateral, Sale, and Financing orders."  Adv. Dkt. 22 at 14.  The Court respectfully disagrees.

The Second Cause of Action seeks the recovery of money against Defendant based on an alleged failure of consideration supporting the Subordination Agreement or, alternatively, mistake, fraud, coercion, breach of duty or other inequitable conduct.  This is a contractual or quasi-contractual claim arising under state law, not a claim arising under the Bankruptcy Code.  Does the claim refer in some measure to events that occurred in the bankruptcy case?  Yes.  Plaintiffs allege that Defendant's conduct in the bankruptcy case breached the Waiver Agreement, and denied Plaintiffs the benefit of their bargain under the Subordination Agreement.  Further, Plaintiffs allege that the measure of damages or unjust enrichment is the amount that was distributed to Defendant pursuant to orders of this Court, during this case.  But the complaint does not allege that any order of the Court was incorrect or that any distribution authorized by the Court should be invalidated.

Defendant attempts to bolster its argument by reference to the law governing a cause of action for "money had and received" under California law.  Adv. Dkt. 22 at 20.

> A common count for money had and received is not a specific cause of action; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness.  Although such an action is one at law, it is governed by principles of equity.

---

[3] *See* Adv. Dkt. 22 at 10-11 & note 54.

A cause of action for money had and received is stated if it is alleged that the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff. The claim is viable wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter. The plaintiff must prove that the defendant received money intended to be used for the benefit of the plaintiff, that the money was not used for the plaintiff's benefit, and that the defendant has not given the money to the plaintiff.

*Camden Sys., LLC v. 409 N. Camden, LLC*, 103 Cal. App. 5th 1068, 1082 (2024) (citations and internal quotations omitted). Defendant argues that the only way Plaintiffs could conceivably make out a case under these legal standards is to ignore the import of this Court's final orders approving the financing arrangements in the case, granting Defendant certain liens and priorities of distribution with respect to estate assets, as well as the Bankruptcy Code provisions that animate those orders. Adv. Dkt. 22 at 20.

What Defendant effectively is arguing is that it has *defenses* to the Second Cause of Action based on the final orders of this Court, provisions of the Bankruptcy Code and federal principles of preclusion. It may.[4] But the possibility of these defenses is insufficient to transform a state law contractual or quasi-contractual claim between creditors into a claim "arising under" the Bankruptcy Code.

The Supreme Court has "long held that 'the presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Id.* (citations omitted). "Thus, 'a case may not be

---

[4] The Court has repeatedly emphasized that it is not making any decision, or even expressing an opinion, on the merits of any such defenses. That continues to be true. The assessment of any such defenses is up to the tribunal that ultimately adjudicates these claims.

removed to federal court on the basis of a federal defense, … even if the defense is anticipated in the plaintiff's complaint and even if the both parties admit that the defense is the only question truly at issue in the case.'" *Id.* (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983).

The Amended Complaint pleads contractual and quasi-contractual claims under California law against Defendant.  Those claims refer to and depend on events that occurred during the bankruptcy case, but are not based on any provision of the Bankruptcy Code—implicitly or explicitly.  Instead, the Amended Complaint seeks recovery under California law based on the contractual or quasi-contractual relations between the parties.   That Defendant intends to assert preclusion and other defenses based on federal law is legally irrelevant.  *See, e.g., id.* at 477-78 (rejecting removal of civil matter based on anticipated defense of claim preclusion under federal law).  This Court does not have "arising under" jurisdiction over the Amended Complaint and removal on that basis is not justified.

### 2.   "Arising In"

For the same reasons, the Court rejects Defendant's argument that the Court has "arising in" jurisdiction.  Defendant argues that the Amended Complaint "puts at issue multiple key decisions of this Court: the Cash Collateral Order, the Sale Order, and the Financing Orders," all of which were entered in this bankruptcy case.  Adv. Dkt. 22 at 16.  Defendant contends that the claims in the Amended Complaint are "inextricably tied" to the bankruptcy case, "would not exist outside of it," and involve "questions concerning the proper administration of the estate."  *Id.*  But the Court is not persuaded.

First, the argument misconstrues the test for "arising in" jurisdiction.  The question is not whether the proceeding would not exist but for a historical or circumstantial connection to a bankruptcy case.  The question is whether the "proceeding *[by] its nature*, could arise only in the context of a bankruptcy case." *In re Ray*, 624 F.3d at 1130 (emphasis added).[5]  Although the

---

[5] *See also id.* at 1131 ("A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of

(Continued...)

events of the bankruptcy case provide part of the factual predicate for the Amended Complaint, what Plaintiffs complain of is Defendant's alleged contractual and quasi-contractual breach. Based on that breach, Plaintiffs argue they are entitled to damages and/or restitution. Although the measure of their entitlements is alleged by reference to the amounts Defendant has or will receive through the bankruptcy case, that is not essential to the *nature* of the claims. These claims are of the nature that could be (and commonly are) asserted outside of bankruptcy.

Defendant's citation to *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 14331, 1435-38 (9th Cir. 1995) and *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521, 525 (B.A.P. 9th Cir. 1993) do not advance its position. These courts found "arising in" jurisdiction over claims against a bankruptcy trustee from the trustee's conduct in administering estate assets. Those are claims of a nature that can only exist in a bankruptcy case. In contrast, the claims asserted in the Amended Complaint are contractual and quasi-contractual inter-creditor disputes based on agreements entered into years before the bankruptcy case.

It is undeniable that the Debtor filed bankruptcy and its assets were liquidated here. These disputes, however, could have arisen following the liquidation of the Debtor's assets in some other proceeding or by some other means. *See, e.g., In re Ray,* 624 F.3d at 1131 (claim for breach of contract arising out of sellers' purported failure to comply with the right of first refusal in bankruptcy sale did not "by its nature ... arise only in the context of a bankruptcy case.") Moreover, irrespective of Defendant's bankruptcy-based defenses, it is the nature of the *claims* that defines jurisdiction. *Id.* (finding no core jurisdiction notwithstanding defendants' assertion of claim preclusion under federal law). In sum, the nature of the claims presented here is not peculiar to bankruptcy.

Second, Defendant's argument mischaracterizes the claims as a "collateral attack" on orders entered in bankruptcy case. The Amended Complaint describes orders of the Court and, in some measure, relies on transactions that were implemented pursuant to those orders. But the Amended

---

bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.") (citations omitted).

13

Complaint does not challenge the validity or enforceability of the Court's orders, and none of those orders opined on any theories of liability asserted in, or any defenses asserted to, the Amended Complaint.

During the bankruptcy case, Plaintiffs did raise an objection to approval of the Litigation Financing based on the Waiver Agreements and the Court did approve the financing notwithstanding the objection. *See generally* Case Dkt. 1880 at 22:7-39:18. But the Court expressly declined to rule on the merits of Plaintiffs' objection, noting that approval of the financing under the Bankruptcy Code and any contractual consequences under the Waiver Agreements were separate issues. *Id.* at 28:23-29:6.

The Court made it clear that it was only deciding the question of whether the financing should be approved under the Bankruptcy Code:

> In the same way that I've found it unnecessary to rule on the merits of the objecting creditors' contention [that] the financing would constitute a breach of UBS's contractual obligations, I find it unnecessary to rule on whether they are equitably estopped from making such an argument or bringing such a claim. [The issue] presented here is simply whether to approve of post-[petition] financing under Section 364.

Case Dkt. 1880 at 30:22-31:4.[6] Under these circumstances, the Court is not persuaded that adjudication of the Amended Complaint in another forum threatens the validity of the financing,

---

[6] Under Federal Rule of Civil Procedure 60(a), "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a) made applicable by Fed. R. Bankr. P. 9024(a). The "basic distinction between 'clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of 'blunders in execution' whereas the latter consist of instances where the court changes its mind." *Tattersalls, Ltd. v. Dehaven*, 745 F.3d 1294, 1297 (9th Cir. 2014) (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987)). The Court has compared the official transcript of the hearing at Case Dkt. 1880 with the Court's official audio file recording and made the foregoing corrections to clerical errors in the official transcript.

14

deprives any party of the protections accorded them under the financing, or threatens the fair and efficient administration of this chapter 7 case.[7]

Moreover, the Court does not find persuasive the decisions cited by Defendant in which courts found arising in jurisdiction: *In re J.S. Kalama, LLC,* No. BK 3:20-BK-41495-MJH, 2025 WL 1078841 (B.A.P. 9th Cir. Apr. 9, 2025) and *Delaware Tr. Co. v. Wilmington Tr., N.A.,* 534 B.R. 500, 513 (S.D.N.Y. 2015).  The dispute in *Kalama* centered on a bankruptcy court-approved settlement agreement regarding the distribution of estate assets that had not yet been distributed. *Id.* *3, *7-*8.  Here, there is no dispute over the meaning of any bankruptcy court-approved settlement agreement or order distributing assets of the estate.  Plaintiffs assert under state law that Defendant is liable for a contractual or quasi-contractual breach and that the measure of its damages are certain funds Defendant has received (or will receive) from the estate.

Likewise, in *Delaware Tr. Co.,* the dispute was over application of an intercreditor agreement to the allocation of adequate protection payments being made during the bankruptcy case in connection with the debtor's use of cash collateral.  *Id.* at 513.  Not surprisingly, the court concluded the dispute would not exist outside of bankruptcy and fell squarely within the scope of "arising in" jurisdiction. *Id.* at 513-16.  Again, there is no dispute here regarding the distribution of estate assets pursuant to bankruptcy law, any order of this Court, or any agreement approved by this Court.  The Amended Complaint does not interfere with the administration of the case, the adjudication of any entitlements from the estate, or the distribution of any assets by the estate.  It simply asserts claims for damages and/or restitution against Defendant.

Finally, the Court is not persuaded by Defendant's related argument that there is "arising in" jurisdiction because the Amended Complaint would require the interpretation of various orders of this Court.  It is undeniable that this Court has jurisdiction to interpret and enforce its orders when

---

[7] Again, the Court reiterates that neither the foregoing statement or anything else in this Order is intended to express an opinion on the merits of the claims alleged in the Amended Complaint or any potential defense that UBS may assert, including defenses based on federal principles of issue preclusion, claim preclusion, equitable estoppel and judicial estoppel.  These are for the tribunal that ultimately hears the Amended Complaint to assess.  The Court has made no determination of the merits of any claim in or potential defense to that complaint.

15

it retains jurisdiction to do so. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (concluding bankruptcy court had jurisdiction to enter an order clarifying a prior order entered in the case). That does not answer, however, the question of *which* form of original jurisdiction exists (if it all) when a civil action is removed from state court.

The kind of jurisdiction a bankruptcy court invokes to interpret and enforce its orders is a form of *ancillary* jurisdiction. *See In re Ray*, 624 F.3d at 1135. The United States Supreme Court has instructed, however, that the judge-made doctrine of ancillary jurisdiction is inadequate to justify removal of a state court proceeding to federal court. *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002) ("Removal is governed by statute, and invocation of ancillary jurisdiction, like invocation of the All Writs Act, does not dispense with the need for compliance with statutory requirements.")

> As we explained in *Peacock,* … a "court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." 516 U.S., at 355, 116 S.Ct. 862. Ancillary jurisdiction . . . cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441.

*Id. at* 34.

In this case, the matter was removed under 28 U.S.C. § 1452, rather than § 1441, but the principle is the same. A party removing a matter from state court must demonstrate a source of *original* jurisdiction under the applicable statute in order to justify removal. Even if the Court accepts as true the contention that the Amended Complaint will require interpretation of orders it entered during the bankruptcy case, that fact alone does not establish original jurisdiction under either form "core" jurisdiction enumerated in 28 U.S.C. § 1334(b). For the reasons stated above, Defendant has failed to demonstrate that the Civil Action is a matter "arising under" title 11 or "arising in" a case under title 11. That a court may have to read, understand or even interpret the orders entered in this case is inadequate to persuade the Court otherwise.

### 3.  "Related To"

In the Amended Remand Order dealing with removal of the Original Complaint, the Court declined to rule definitively whether it had "related to" jurisdiction over the Civil Matter. The

16

Court reasoned that such a ruling was unnecessary because, even assuming such jurisdiction, the Court determined it would remand the matter on equitable grounds under 28 U.S.C. § 1452(b). Little has changed since the Prior Removal.  This time around, however, the Court believes the parties will be aided by a definitive ruling on this issue.

Specifically, the Court concludes that it has "related to" jurisdiction over the Civil Action. Although the contractual and quasi-contractual claims asserted in the Amended Complaint do not directly involve the administration of the estate, the applicable legal standard requires the Court to assess whether the outcome of the litigation might "conceivably" affect the estate.  This standard is satisfied because Defendant asserts an indemnity claim against the estate if Plaintiffs are successful in recovering against Defendant in the Civil Action.

That the estate is administratively insolvent at present does not alter this analysis.  It is true that if the Trustee is not successful in the Trustee Litigation, and no funds are available in the estate for distribution, Defendant's indemnity rights against the estate will have no impact on any distributions made by the estate.  But if the Trustee is successful in the Trustee Litigation, Defendant's indemnity rights (which the Court is not adjudicating at this time) could conceivably affect the distributions to be made from the estate.

As demonstrated below, however, the Court's conclusion that "related to" jurisdiction exists does not alter its equitable analysis regarding remand.  In the Prior Removal, the Court *assumed* that any jurisdiction it had over the Civil Action was nothing more than "related to" (i.e., "non-core" jurisdiction).  Here, the Court *concludes* that it "has related to" jurisdiction but nevertheless finds, again, that the impact of the Civil Action on the administration of the case is insufficient to justify retention of the Civil Action.

**C.  Equitable Remand**

"Bankruptcy courts have broad discretion to remand cases over which they otherwise have jurisdiction on any equitable ground." *In re Enron Corp.*, 296 B.R. 505, 508 (C.D. Cal. 2003). Section 1452 of the Judicial Code provides, in pertinent part: "The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  28

17

U.S.C. § 1452(b).   Courts generally consider fourteen factors in deciding whether to remand a case to state court. *Enron*, 296 B.R. at 508.  The factors courts consider are:

(1)     the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;

(2)     extent to which state law issues predominate over bankruptcy issues;

(3)     difficult or unsettled nature of applicable law;

(4)     presence of related proceeding commenced in state court or other nonbankruptcy proceeding;

(5)     jurisdictional basis, if any, other than [section] 1334;

(6)     degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7)     the substance rather than the form of an asserted core proceeding;

(8)     the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     the burden on the bankruptcy court's docket;

(10)    the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial;

(12)    the presence in the proceeding of nondebtor parties;

(13)    comity; and

(14)    the possibility of prejudice to other parties in the action.

*Id.*, 508 n.2; *see also In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 738 (Bankr. C.D. Cal. 2007).

**The first factor** (efficient administration) weighs in favor of remand.  Defendant argues that the efficient administration of this chapter 7 case depends on this Court being the one to adjudicate the Civil Action.  Defendant relies on the premise that the Civil Action seeks to revisit a variety of final orders entered in the case.  But the argument lacks merit.  The Civil Action raises questions of California law, i.e., whether Defendant breached the Waiver Agreement by its participation in the Litigation Fund and Litigation Financing, and whether it was unjustly enriched by way of the Subordination Agreement.  The Civil Action does not challenge the validity or

18

enforceability any order of this Court.  To the extent Defendant has defenses under federal law based on events that occurred during case (including the entry of orders by this Court), it is free to assert those defenses in the Superior Court.

But one way or the other, the litigation will not affect the efficient administration of this case.  Defendant has not expressed its intention to cease making advances to the estate under the Litigation Financing because of the pendency of the Civil Action or demonstrated any entitlement to do so.  To the extent Defendant has previously suggested that the outcome of the Civil Action may impact the willingness of Defendant or other lenders to fund estate litigation in the future, in other cases, its argument is simply irrelevant to the administration of *this* estate.

Finally, Defendant's assertion of an indemnity claim against the estate for any recovery obtained against Defendant by Plaintiffs in the Trustee Litigation does not alter this analysis.  Whatever the merits of the indemnity claim, it is and will remain contingent until the Trustee Litigation is completed.  If the Trustee is not successful in the Trustee Litigation, any indemnity right Defendant may have against the estate will be of little import.  If the Trustee is successful in the Trustee Litigation, the existence and extent of any such indemnity right can promptly be determined in connection with a final distribution by the chapter 7 trustee.  The Court simply does not see the possibility of an indemnity claim as an impediment to the prompt resolution of this chapter 7 liquidation case

**The second factor** (predominance of state law issues) weighs in favor of remand.  The claims presented in the Civil Action are exclusively state law claims.  Defendant argues that in adjudicating those claims, the deciding court may be required to determine whether Plaintiffs' failure to object to various matters in this Court estops them under federal law from asserting their claims.  Defendant also argues that the deciding court may be required to apply federal law with respect to the scope of releases given by Defendant.  Assuming all this is true, the Court nonetheless finds that state law issues predominate.  Although Defendant may assert defenses based on federal law, the action is fundamentally a claim for damages and/or restitution arising out of the parties' contractual and business relations.

19

**The third factor** (difficult/unsettled nature of the applicable law) weighs against remand. The Court is not persuaded that there are difficult or unsettled areas of state law presented in the Civil Action. The Court *could* adjudicate the Civil Action. For equitable reasons, however, the Court ultimately concludes it should not be the court to do so.

**The fourth factor** (presence of a related proceeding commenced in state court) is neutral. Prior to removal of the Civil Action, there was *no other* related civil action pending in the Superior Court. However, the Civil Action clearly was commenced in the Superior Court and, upon remand, would be available to adjudicate the parties' rights.[8]

**The fifth factor** (jurisdictional basis other than 28 U.S.C. § 1334(b)) favors remand. The only basis asserted for this Court (or any federal court) to exercise jurisdiction over the Civil Action is 28 U.S.C. § 1334(b).

**The sixth factor** (relatedness to the main bankruptcy case) weighs in favor remand. "Here, it is relevant to ask whether the adversary proceeding is 'core' or 'non-core.'" *In re Cytodyn of New Mexico, Inc.*, 374 B.R. at 740 (citing *Eastport Assoc. v. City of Los Angeles (In re Eastport Assoc.)*, 935 F.2d 1071, 1076 (9th Cir.1991)). As discussed above, in Section II.B, the Court has only "non-core" jurisdiction over the Civil Matter.

**The seventh factor** (the substance of an asserted "core" proceeding) is irrelevant because the claims in the Civil Action are not core claims and this is not a core proceeding.

**The eighth factor** (feasibility of severing state law claims from core claims with enforcement left to the bankruptcy court) is irrelevant because there are no core claims.

**The ninth factor** (burden on the Court's docket) weighs against remand. This Court's docket is not so burdened that it could not promptly adjudicate the Civil Action.

---

[8] Based on the removal of the Civil Action, abstention would not be appropriate under Ninth Circuit law because there is no action pending in state court in favor of which the Court can abstain. *Schulman v. Cal. (In re Lazar)*, 237 F.3d 967, 981-82 (9th Cir. 2001) ([Sections] 1334(c)(1) and (c)(2) "are simply inapplicable" following removal as no state proceeding exists following removal). Here, however, the Court is focusing on the question of remand. That the Civil Action was pending in Superior Court and has since been removed to this Court is simply not remarkable. It does not weigh for or against remand.

**The tenth factor** (likelihood of forum shopping) is neutral.  The Plaintiffs and the Defendant each accuse the other of forum shopping.  Each clearly has a preference as to where the Civil Action proceeds.  Each undoubtedly perceives its preferred forum as being better for itself.  The Court is not persuaded that the possibility of forum shopping by the parties counsels for or against remand here.

**The eleventh factor** (existence of a jury trial right) is neutral.  The entitlement to a jury trial is asserted by Plaintiffs and hotly contested by Defendant, which contends among other things that any such right has been waived.  The Court need not wade into this disagreement and believes it is most appropriate for the tribunal that will ultimately adjudicate the dispute to make this important determination.  The Court merely observes that even if Plaintiffs do not have a jury trial right, the other factors supporting remand on equitable grounds overwhelmingly favor remand of the Civil Action.

**The twelfth factor** (the presence of nondebtor parties) favors remand.  Although not determinative by itself, the fact that the Civil Action is exclusively between non-debtor and non-estate parties—is significant.  Again, even though Defendant intends to raise defenses based on federal law and events that occurred in or related to the bankruptcy case, the Civil Action fundamentally is a contractual dispute between two non-debtor parties.

**The thirteenth factor** (comity) does not favor remand.  The Superior Court has no significant judicial resources invested in the Civil Action and there do not appear to be any novel or unsettled questions of state law presented.

**The fourteenth factor** (the possibility of prejudice to other parties in the action) is neutral.  That Plaintiffs and Defendant each see their preferred forum as better for themselves (and therefore more likely to result in a substantive victory) does not mean that prejudice will result from either outcome.  The affected parties will be able to participate equally in either forum and entitled to the same due process protections and other rights.

21

**D. Conclusion**

Based on its consideration of the foregoing factors, the Court concludes that it should exercise its equitable discretion to remand the Civil Action to the Superior Court pursuant to 28 U.S.C. § 1452(b).

THEREFORE, based on the foregoing, it is hereby **ORDERED**:

1. The Civil Action is hereby **REMANDED** to the Superior Court pursuant to 28 U.S.C. § 1452(b), for the equitable reasons described above.

2. The OSC is **DISCHARGED.**

3. This Order is **STAYED** through and including the 15th day following the date of its entry.

###

Date: April 30, 2026

Martin R Barash
United States Bankruptcy Judge